Rafaela EURESTI et al., Plaintiffs,

v.

Richard STENNER, as Administrator of the Weld County General Hospital, et al., Defendants.

Civ. A. No. C-2462.

United States District Court, D. Colorado.

May 28, 1971.

Kirk Wickersham, Richard D. Unruh, Rural Legal Services, Inc., Greeley, Colo., for plaintiffs.

Ronald Lee Cook, Samuel S. Telep, Denver, Colo., for defendants, Board of County Commissioners of Weld County.

Thomas A. Richardson and William L. West, Greeley, Colo., for defendants, Weld County General Hospital.

## MEMORANDUM OPINION AND ORDER

CHILSON, Judge.

This matter is before the Court on defendants' motions to dismiss the complaint. The Court has considered the motions and the briefs in support of and in opposition thereto and is duly advised. The matter has been adequately presented by counsel for the parties to the action and the motions of American Public Health Association and The National Legal Program on Health Problems of the Poor to appear as Amicus Curiae are hereby denied.

The complaint alleges the defendants as administrators, trustees, and county commissioners, operate the Weld County General Hospital, and that the plaintiffs are residents of Weld County who are unable to pay for hospital service. They seek a declaratory judgment that they and others similarly situated have a right to a reasonable volume of free hospital services and those who are unable to pay have a right to be admitted and served in the hospital without charge.

They seek mandatory injunctions to enforce these alleged rights.

As a basis for these alleged rights, the complaint alleges:

"Pursuant to the Hill-Burton Act, the Colorado Hospital Plan, and the Colorado Establishment of County Hospitals Act, the trustees made application to the United States Government for funds with which to build the hospital; in this application, the trustees agreed to furnish a community service and to furnish at below cost or without charge, a reasonable volume of services to persons unable to pay therefor. Subsequently, this application was approved and funds were granted to the trustees for this purpose. The hospital was constructed with these funds in 1954 and currently serves people within the service area. *The application and its acceptance by the United States Government, plus other documents which plaintiffs believe, and therefore allege, exist, create a contract between the trustees and the United States Government, obligating the trustees to provide the services alleged above.*"

The complaint alleges a breach of this agreement by the defendants and the essence of this action is for specific performance of the alleged contract.

To evaluate the validity of the conclusion drawn by the plaintiffs that a contract was created between the defendant trustees and the United States, we have reviewed the Hill-Burton Act and the State legislation from which plaintiffs drew their conclusion.

This review, which we hereinafter set forth, reveals no foundation for the plaintiffs' conclusion; on the contrary, it is clear from this review that the contract, if any, was between the United States and the State of Colorado, and not between the United States and the defendants.

The County Hospitals Establishment Act, 66–7, C.R.S.1963, referred to by plaintiffs, was enacted by the Colorado Legislature in 1943 some three years before the Hill-Burton Act. It provided for the establishment of public hospitals by county commissioners; it authorized the levy of taxes for their maintenance; it authorized creation of hospital boards to manage them, and authorized bonded indebtedness for their acquisition. The establishment of county hospitals, including the Weld County Hospital, was solely an exercise of the power of the State of Colorado in which the Federal Government played no part.

In 1946, Congress enacted the so-called "Hill-Burton Act", which the Act refers to as the "Hospital Survey and Construction Act". This Act is Public Law 725 enacted by the 79th Congress, and was approved August 13, 1946, 60 Stat. 1040. We here review pertinent sections.

The Act declares its purposes as follows:

"Sec. 601. The purpose of this title is to assist the several *States*—(a) to inventory their existing hospitals (as defined in section 631 (e), to survey the need for construction of hospitals, and to develop programs for construction of such public and other nonprofit hospitals we will, in conjunction with existing facilities, afford the necessary physical facilities for furnishing adequate hospital, clinic, and similar services to all their people; and (b) to construct public and other nonprofit hospitals in accordance with such programs." (Emphasis supplied.)

To carry out the purposes stated in section 601(a), Sec. 621 appropriated a sum of money which

"shall be used for making payments to *States* which have submitted, and had approved by the Surgeon General, *State* applications for funds for carrying out such purposes." (Emphasis supplied.)

Section 613(a) provides:

"*Each state* for which a *state* application under section 612 has been approved, *shall be entitled to an allotment* of such proportion of any appro-

priation made \* \* \* as its population compares to the population of all the states, and within such allotment, shall be entitled to receive thirty-three and one-third percentum of its expenditures in carrying out the purposes of section 601(a) in accordance with its application \* \* \*." (Emphasis supplied.)

Section 612 provides:

"To be approved, a *State* application for funds for carrying out the purpose of section 601(a) must—

"(1) Designate a single *State Agency as the sole agency* for carrying out such purposes . . ., (2) provide for the designation of *a State Advisory Council* . . . (3) provide for making an inventory and survey in accordance with section 601(a) . . . ; (4) provide that the *State Agency* will make such information, as the Surgeon General may, from time to time, reasonably require, and give the Surgeon General, upon demand, access to the records on which such reports are based." (Emphasis supplied.)

Section 622 provides for the issuance of general regulations. Section 622(f) provides that regulations shall be prescribed:

"That the *State plan* shall provide for adequate hospital facilities for the people residing in a state, without discrimination on account of race, creed, or color, and *shall provide for adequate hospital facilities for persons unable to pay therefor.* Such regulation may require that before approval of any application for a hospital or addition to a hospital is recommended by a *State Agency, assurance shall be received by the State from the applicant* that (1) such hospital . . . will be made available to all persons residing in the territorial area of the applicant, without discrimination on account of race, creed, or color . . . ; and (2) it will be made available in each such hospital or addition to a hospital, a reasonable vol-

ume of hospital services to persons unable to pay therefor, but an exception shall be made if such a requirement is not feasible from a financial standpoint."

The regulations adopted pursuant to section 622 provide:

"Before an application for the construction of a hospital or medical facility is recommended by a State Agency for approval, the *State Agency* [in this case, the Colorado State Department of Public Health] *shall obtain assurances from the applicant* that: \* \* \* (b) *the facility will furnish below cost or without charge, a reasonable volume of services to persons unable to pay therefor."* (Emphasis supplied.) C.F.R. Title 42– Chap. 1, Sec. 53.111.

■ It is clear that it was the Congressional intent that the Federal Government would provide funds to the states, but the allocation of these funds to the various projects within a state was to be the responsibility of the state and not the Federal Government. The Act and the regulations set up certain standards and safeguards to be followed by the states, but the plan for the use of Hill-Burton funds was a state plan which determined the individual projects to receive financial assistance. This was clearly a state function and not a function of the Federal Government.

To comply with these requirements of the Hill-Burton Act, the Colorado Legislature in 1947 enacted 66–18 C.R.S. '63, which:

1. Designated the State Department of Public Health "as the sole agency for carrying out the purposes of the Federal 'Hospital Survey and Construction Act', being Public Law 725 of the 79th Congress";

2. Authorized the Department of Public Health to formulate, submit, *and administer a state plan* to qualify for funds under the Hill-Burton Act;

3. Provided:

"The *State plan* established hereunder shall provide adequate hospital

facilities for the people residing in the State, without discrimination on account of race, creed, or color, and *shall provide for adequate hospital facilities for persons unable to pay therefor.*";

4. Established a "State Advisory Hospital Council" as required by the Hill-Burton Act;

5. Provided:

"The State Department of Public Health shall not take final action on any state plan or make any allotment of funds for any project under the provisions of this article, until such plan of proposed project shall have been submitted to the State Advisory Hospital Council and its advice thereon obtained."

6. Provided:

*"The State plan established hereunder shall provide for adequate hospital facilities . . . for persons unable to pay therefor.* The State Department of Public Health shall, after consultation with the Advisory Council hereinafter established, provide minimum standards for the maintenance of operation of hospitals which receive Federal aid under this article, and compliance with such standards shall be required in the case of hospitals which shall have received Federal aid under the provisions of said Federal Act (Hill-Burton Act), or any amendments thereto."

We find and determine that the allegations of fact in the complaint do not support the plaintiffs' legal conclusion that a contractual relationship or a contract was created between the defendants and the United States Governments. It is clear that the only legal conclusion

which can be drawn from the factual allegations of the complaint is that the contractual relationship, if any, was between the United States and the State of Colorado.

Assuming, however, the correctness of plaintiffs' legal conclusion, that there was a contract between the United States and defendants, the following provision of the Hill-Burton Act, enacted in 1964, bars this action:

"Except as otherwise specifically provided, nothing in this subchapter shall be construed as conferring on any Federal officer or employee, the right to exercise any supervision or any control over the administration, personnel, maintenance, or operation of any facility with respect to which any funds have been or may be expended under this subchapter." (42 U.S.C.A. Sec. 291m)

Since the Federal officers who administer the Hill-Burton Act are precluded from maintaining an action to control the administration and operation of the Weld County Hospital, it follows that plaintiffs have no greater power to maintain such an action.

We concur with the statement contained in Judge Duncan's opinion in Stanturf v. Sipes, 224 F.Supp. 883 at 891 (W.D.Mo.1963).[1] After quoting section 291m of the Hill-Burton Act, (*supra*) Judge Duncan stated:

"We must assume therefore, that regardless of any funds which have been contributed by the Government, that this section of the statute (42 U.S.C. Sec. 291m) was written purposefully, and it very clearly establishes that the Federal Government did not intend to have any influence whatsoever in the operation of any hospital brought into existence through a grant under the

---

1. Although the dismissal of this action was affirmed by the Circuit Court of Appeals, Eighth Circuit, 335 F.2d 224 and certiorari denied 379 U.S. 977, 85 S.Ct. 676, 13 L.Ed.2d 567 (1965), the Circuit Court of Appeals neither approved nor disapproved Judge Duncan's construction of

Sec. 291m, but affirmed the dismissal because the jurisdictional allegations were mere conclusionary statements without factual support and were inadequate to demonstrate a cause of action arising under the Constitution or laws of the United States.

Hill-Burton Act. Had it been otherwise, unquestionably the Congress would have said so. The Congress was careful to spell out the circumstances and conditions under which the Government through the Surgeon General of the United States could recover either through the State Agency or directly from the applicant under certain specific circumstances, the amount its allotment or the proportionate part of the allotment bore to the whole of any proceeds resulting from the liquidation of the project.

"There is no suggestion in any section of the statute that jurisdiction is conferred upon the Federal court to try any case or to entertain jurisdiction in any litigation that might arise out of the operation of the hospital, except that which is specifically granted under the statute. It must be assumed from a reading of the statutes, that the Surgeon General placed a burden upon the State Agency to see that the hospital facilities that were created as a result of these grants were carried out in accordance with the spirit of the Act."

The Court concludes the action should be dismissed for the reasons which follow.

First, assuming there was a contract, as plaintiffs allege, between the United States and the defendants, the action is barred by Sec. 291m (*supra*) of the Hill-Burton Act.

█ Second, assuming that the United States has a right of action, there is nothing in the Hill-Burton Act which indicates a Congressional intent to authorize, expressly or impliedly, a private right of action to enforce the rights of the United States. Therefore, the plaintiffs have no standing to bring the action.

Third, the complaint does not state a claim upon which relief may be granted, for the facts alleged in the complaint do not support the plaintiffs' basic legal conclusion that a contract was created

between the United States and the defendants.

It is therefore ordered that this action be dismissed with prejudice and that judgment of dismissal be entered forthwith.